IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

JACK DONALD EGERTON, JR.,                §
                                         §
        Petitioner,                      §
                                         §
v.                                       §        2:98-CV-0340
                                         §
DOUGLAS DRETKE, Director,                §
Texas Department of Criminal Justice     §
Correctional Institutions Division,      §
                                         §
        Respondent.                      §

**REPORT AND RECOMMENDATION
TO DISMISS PETITION FOR A WRIT OF HABEAS CORPUS**

        Petitioner JACK DONALD EGERTON, JR. has filed with this Court a petition for a writ of

habeas corpus by a person in state custody challenging his conviction and sentence for the felony

offense of aggravated robbery out of the 181st Judicial District Court of Potter County, Texas.  For

the reasons hereinafter set forth, it is the opinion of the undersigned United States Magistrate Judge

that petitioner's habeas application should be DISMISSED for failure to exhaust state court

remedies and as procedurally barred.

I.
FACTUAL AND PROCEDURAL BACKGROUND

        Based on various incident reports of the Amarillo Police Department (APD),[1] beginning on

---

[1]Respondent provided the Court with a copy of these incident reports, identifying them as state court records, submitted in conjunction with a motion to cancel a scheduled evidentiary hearing.  Appointed habeas counsel utilized the incident reports for purposes of cross-examination of petitioner's trial counsel but objected to the introduction of said reports on the basis that they contained hearsay.  These reports were not introduced into evidence at the hearing and are not before the Court for all purposes.

May 14, 1995, a series of aggravated robberies and burglaries were committed in Amarillo, Texas.

On May 25, 1995, a robbery was committed resulting in the arrest of petitioner's brother, Jerry Mac

Rotenberry.  Reports indicate that, at the time, petitioner and his wife were residing at the same

address as Rotenberry.  On May 27, 1995, while Rotenberry was still in custody, another

aggravated robbery was committed at a Pizza Hut where petitioner's wife had once worked.

Reports also indicate that because of the similarities of the robberies, surveillance of the residence

petitioner shared with his brother was initiated on June 2, 1995.

On June 9, 1995, another burglary of a habitation was committed.  APD incident reports

indicate that same date, the complainant positively identified petitioner in a photo array as having

committed the burglary.[2]  An arrest warrant on the burglary of a habitation offense was issued for

petitioner and executed that same date.[3]  At the time of his arrest for the burglary, petitioner was

*Mirandized*, and taken to the Amarillo Police Department for questioning regarding the burglary

offense.  At the station, petitioner was again advised of his rights but stated he had nothing to say

and requested an attorney.[4]  As a result, petitioner was taken to the downtown Sheriff's Office,

booked into custody, and then transported to the Potter County Detention Center.

Based on incident reports, it appears a search of the residence after petitioner's arrest

revealed several items stolen as a result of the various burglaries and/or robberies.  Also based on

---

Further, the reports are not true state court records as they were not filed with the convicting court or the state habeas court. Such reports, however, would have been in the DA's case file and readily available to petitioner's trial counsel.  Therefore, they are summarized herein as they are relevant on the issue of information petitioner's trial counsel reviewed for his testimony at the evidentiary hearing.

[2]The complainant also positively identified petitioner's brother, Rotenberry, as taking part in the burglary.

[3]Petitioner's brother was also arrested for the burglary.

[4]Based on petitioner's testimony at an evidentiary hearing held before the undersigned on July 19, 2005.

incident reports, it appears that on the night of petitioner's arrest, petitioner's wife gave officers a written affidavit wherein she implicated petitioner and his brother in several of the robberies and burglaries.

Incident reports also indicate that on June 10, 1995, officers obtained an affidavit from a friend of petitioner's wife wherein the friend averred petitioner and his brother had, the day before, bragged about the series of robberies and burglaries they had committed.  Petitioner's wife also apparently contacted the APD and advised petitioner wanted to talk with the police.

The next day, June 11, 1995, a Sunday, Amarillo police officers Tim Williams and Ken Farren retrieved petitioner from the detention center and transported him to the Amarillo Police Department.  After again being advised of his constitutional rights, petitioner gave several recorded oral statements to the officers, one of which included an admission that he committed the May 27, 1995 aggravated robbery of the Pizza Hut.  Petitioner did not give a written statement, nor were the oral statements transcribed and put into affidavit form for petitioner to review and sign.

On June 14, 1995, the State filed an initial complaint against petitioner charging him with the June 9, 1995 burglary of a habitation offense.  On June 23, 1995, the State filed an initial complaint against petitioner charging him with the May 26, 1995 aggravated robbery offense.

On July 27, 1995, petitioner was indicted, in Cause No. 35,369-B, for the June 8, 1995 burglary of a habitation offense.  Petitioner was also indicted, in Cause No. 35,371-B, for the May 26, 1995 aggravated robbery offense.[5]  On February 12, 1996, petitioner entered pleas of guilty to both indictments in exchange for a punishment recommendation by the State of imprisonment for twenty (20) years on each offense, said sentences to run concurrently.  The State's punishment

---

[5]Both indictments alleged a 1989 felony conviction for burglary of a motor vehicle for purposes of enhancing punishment.

recommendation for the aggravated robbery offense included an affirmative deadly weapon finding.

The trial court accepted such pleas, found petitioner guilty of both offenses and, after finding the enhancement paragraphs to be true, assessed petitioner's punishment at two (2) terms of twenty (20) years imprisonment in the Texas Department of Criminal Justice, Institutional Division, to run concurrently.  Petitioner did not directly appeal either of his convictions to the appropriate state appellate court.

On June 9, 1998, petitioner filed a state writ of habeas corpus challenging his aggravated robbery conviction and 20-year sentence (petitioner did not challenge his burglary of a habitation conviction).  *Ex parte Egerton*, No. 38,300-01.  In his state habeas application, petitioner raised the following grounds for relief:

> 1.  Petitioner's confinement is unlawful because he was denied effective assistance of counsel; and
>
> 2.  The was insufficient evidence to prove a crucial element of the offense.

In its answer to petitioner's habeas application, the State asserted petitioner failed to demonstrate his trial counsel rendered ineffective assistance of counsel and that petitioner's plea of guilty and the signing of the written plea admonishments waived all nonjurisdictional errors.  On September 16, 1998, the Texas Court of Criminal appeals denied petitioner's application for state habeas corpus relief without written order.

Prior to denying state habeas relief, the Texas Court of Criminal Appeals, on August 5, 1998, received from petitioner a "Petition for Writ of Mandamus" wherein petitioner sought "to compel the district court to dispose of the . . . petition for habeas corpus, Cause #35371-B."  *Ex parte Egerton*, No. 38,300-02.  On September 16, 1998, after construing the document as a "Motion

for Leave to File," the Texas Court of Criminal Appeals denied the motion without written order.[6]

On October 9, 1998, petitioner filed the instant application for federal habeas corpus relief challenging his aggravated robbery conviction.[7]  On March 22, 2000, the United States District Judge entered an Order granting respondent's motion to dismiss petitioner's application as time-barred, and dismissing petitioner's habeas application.  Petitioner appealed that Order to the United States Court of Appeals for the Fifth Circuit who, on June 13, 2003, vacated the dismissal and remanded this case for further proceedings in accordance with the Court's opinion.

On July 17, 2003, this case was reopened.  On October 17, 2003, petitioner filed a supplemental brief in support of his original petition.  On November 21, 2003, respondent filed an answer arguing therein that the petition should be denied because numerous claims raised by petitioner were unexhausted and, thus, procedurally defaulted in federal court, that numerous grounds were waived by petitioner's guilty plea, and that petitioner failed to establish the state courts' rejection of his complaints was objectively unreasonable.  On December 17, 2003, petitioner filed a reply brief.  After additional issue-specific briefing by the parties and numerous motions, the Court, on July 19, 2005, conducted an evidentiary hearing on petitioner's allegation that he was denied effective assistance of counsel.  On July 26, 2005, the parties filed supplemental post-hearing briefs on the issue of exhaustion of said ineffective assistance claims.  On August 5, 2005, petitioner filed a post-hearing brief on his claims of ineffective assistance of counsel and, on August 23, 2005, respondent filed a supplemental post-hearing brief on this issue.

---

[6]The Texas Court of Criminal Appeals also received, on August 7, 1998,a "Petition for Writ of Mandamus" wherein petitioner sought "to compel the county court to dispose of the . . . petition for habeas corpus, Cause #67503."  Attached to the petition was a copy of an application for writ of habeas corpus in No. 67,503 out of County Court No. 2 challenging a conviction for driving while license suspended.  On September 16, 1998, after construing the document as a "Motion for Leave to File," the Texas Court of Criminal Appeals denied petitioner's motion without written order.  *Ex parte Egerton*, No. 38,300-03.

[7]Petitioner does not challenge his burglary of a habitation conviction in the instant federal petition.

II.
PETITIONER'S ALLEGATIONS

In his original habeas application, his October 29, 1998 response to a briefing order from this Court, and his October 17, 2003 supplemental brief, petitioner appears to argue his conviction and sentence for aggravated robbery is unconstitutional because:

1.  Petitioner's *confession* to the aggravated robbery offense was involuntary because it was induced by false promises, coerced by threats involving his family, was a result of coercive tactics and circumstances, and was given in violation of his right to counsel;

2.  Petitioner's *guilty plea* was involuntary because it was the fruit of an involuntary confession, was based on misinformation from trial counsel, was coerced by counsel's warning that petitioner would receive a much greater sentence if he did not plea, and counsel's unpreparedness for trial;

3.  Petitioner was denied effective assistance of counsel because counsel:

    a.  failed to properly investigate any aspect of the case to locate exculpatory evidence;

    b.  improperly advised petitioner to accept a plea bargain after giving petitioner incorrect legal advice regarding his confession;

    c.  failed to investigate the circumstances surrounding his custodial confession to determine the voluntariness of said confession;

    d.  failed to file a motion to suppress his confession; and

    e.  failed to file a motion to quash the indictment based on the purportedly involuntary confession.

4.  The evidence was insufficient to prove petitioner committed the aggravated robbery offense because the only evidence against him was his coerced confession;

5.  Petitioner's prior conviction was improperly used to enhance punishment in two separate indictments; and

6.  Petitioner is actually innocent of the offense of which he was convicted.

III.
## EXHAUSTION OF STATE COURT REMEDIES

In his original answer, respondent contends petitioner failed to exhaust his state court remedies with regard to his ineffective assistance of counsel allegations 3(c)-(e), the bases behind his involuntary *guilty plea* in allegation 2, and his claim of actual innocence in allegation 6.  In his post-hearing brief, respondent further argues that to the extent petitioner raised the following arguments in his pleadings or at the evidentiary hearing, such claims are unexhausted:

1.    Petitioner's confession was coerced because of alleged "threatening" statements made by Detective Williams that petitioner's wife was being investigated as an accomplice and that he was asked about his children, specifically, his son who was undergoing cancer treatment;

2.    There was an *Edwards v. Arizona*, 451 U.S. 477 (1981) violation because petitioner did not reinitiate contact with police while under arrest for an unrelated burglary charge;

3.    Petitioner is actually innocent of the aggravated robbery offense;

4.    The police turned the tape recorder off and on during the taping of petitioner's confession;

5.    Petitioner was denied effective assistance of trial counsel when his attorney, Gene Fristoe: (a) failed to investigate a violation of the *Edwards* rule; (b) informed petitioner he would receive the same sentence his brother received if he did not plead guilty; (c) told petitioner his "custodial statement hung him," which rendered his plea involuntary; (d) failed to investigate improper acts by the police surrounding his "coerced custodial confession"; (e) failed to file a motion to suppress his confessions; and (f) failed to file a motion to quash the indictment based on the illegally obtained confession;

6.    Petitioner's plea of guilty was involuntary due to the ineffective assistance of trial counsel when Mr. Fristoe failed to inform him that the State had first offered a 15-year sentence.

Respondent argues consideration of the above unexhausted claims are now barred on the basis of a procedural default because petitioner is precluded from returning to the state courts to exhaust the

claims.  Respondent concludes these claims are now defaulted in federal court.

In his state habeas application, petitioner states only two grounds for relief, *viz.*, petitioner "was denied effective assistance of counsel" and "insufficient evidence . . . there was no evidence on a crucial element of the offense with which I was charged with."  Petitioner then, like many *pro se* litigants, merely quotes various portions of case law,  interspersing such quotes with facts from the case cited or from other case law and/or facts from his case.  In many instances it is difficult, if not impossible, to determine whether petitioner is raising actual claims and making factual allegations applicable to his case, or if he is merely copying language out of case law.  Even when construing petitioner's state habeas petition liberally, the petition asserts, <u>at the very most</u>, the following claims:

1.    Petitioner was denied effective assistance of counsel because counsel:

   a.    did not move to suppress petitioner's involuntary confession;
   b.    did not investigate or discover potentially exculpatory evidence;
   c.    was not ready for trial (did not have a firm command of the facts or law of the case);
   d.    advised petitioner to plead guilty after giving totally incorrect information to petitioner;
   e.    offered petitioner no assistance at all, and prepared no defense at all; and
   f.    misinformed petitioner as to the issues and the law as it related to petitioner's case.

2.    There was insufficient evidence to prove petitioner committed the aggravated robbery offense;

3.    Petitioner's confession was involuntary because:

   a.    petitioner was offered false promises of immunity;
   b.    the confession was induced by threats and fear;
   c.    petitioner was promised a benefit; and
   d.    the confession was the result of an expressed deal.

4.    Petitioner's prior conviction was improperly used to enhance different counts in

separate causes; and

5.      Petitioner's guilty plea was involuntary.

No additional specifics and no factual detail to any of these claims is provided in petitioner's state habeas petition.  Further, grounds 3-5, as well as the bases for petitioner's claim of ineffective assistance of counsel, are derived from the "Facts of the Case" and/or "Arguments and Authorities" portions of petitioner's state habeas application and, as previously noted, <u>were not set forth as grounds for relief</u>.

The above purported claims, liberally construed by this Court, were bare, global allegations of error, failed to assert any specific supporting facts, and failed to set forth the legal theories on which such claims were based.  In fact, all of petitioner's state habeas claims, and in particular his claim of ineffective assistance of counsel,  were without specific detail.  Instead, they were conclusory allegations which failed to apprise the state court of the facts and/or legal theories being asserted.  Petitioner's vague references to expansive concepts of burdens of proof, admissibility of confessions, ineffective assistance of counsel, and due process, together with fleeting references to the Federal Constitution, were not sufficient to alert the state court to petitioner's claims of federal rights violations.  Consequently, the undersigned finds <u>none</u> of the grounds petitioner presents to this Court, with supporting facts and details, were sufficiently exhausted at the state court level. Therefore, it does not appear this Court can grant petitioner federal habeas corpus relief with regard to <u>any</u> of his claims.  It is clear no relief can be granted on his ineffective assistance of counsel allegations 3(c)-(e), the bases behind his involuntary plea in allegation 2, or his claim of actual innocence in allegation 6 as they were all unexhausted.  The undersigned further finds <u>none</u> of the arguments raised in petitioner's pleadings or at the evidentiary hearing are sufficiently exhausted

and are now barred on the basis of procedural default.  *See* 28 U.S.C. § 2254(b)(1).  Critically, any

*Edwards v. Arizona* claim petitioner is attempting to raise was not exhausted by presenting either

the theory of or the substance of the claim to the state habeas courts.  There was absolutely no

reference to a possible *Edwards* claim anywhere in petitioner's state habeas petition, nor was there

even any reference to the facts to support such a claim.  Petitioner presents his *Edwards* claim, and

corresponding ineffective assistance of counsel claim based on *Edwards*, for the first time in this

federal habeas proceeding.  Petitioner is advancing a new legal theory and new facts distinct from

those relied upon in the state court and, thus, fails to satisfy the exhaustion requirement.  *See Vela v.*

*Estelle*, 708 F.2d 954 (5th Cir. 1983), *cert. denied sub nom, McKaskle v. Vela*, 464 U.S. 1053,

(1984).  The undersigned finds these additional claims identified by respondent as being raised in

petitioner's pleadings or at the evidentiary hearing are unexhausted and procedurally barred, and

this Court is precluded from granting any federal habeas corpus relief with regard to these claims.


## IV.
## MERITS

Title 28 U.S.C. § 2254(b)(2) allows this Court to <u>deny</u> an application for a writ of habeas

corpus on the merits notwithstanding the failure of the petitioner to exhaust the remedies available

in the courts of the State.  Although petitioner did not exhaust his available state court remedies

with regard to the claims herein raised, the undersigned hereby addresses the substance of

petitioner's federal habeas claims and finds such claims without merit.


## A.
## Voluntariness of Petitioner's Confession and Guilty Plea and
## Effectiveness of Counsel with Regard to the Confession and Guilty Plea

Petitioner contends his June 11, 1995 *confession* to the aggravated robbery was involuntary

because (1) it was induced by false promises that he "would be charged with no more than two

charges and that [he] would be looking at 10 years in T.D.C."; (2) it was a result of coercion in that officers threatened to arrest his wife and prosecute her as an "accessory to crimes [petitioner] may have committed," resulting in his children being placed with state social services; and (3) it was a result of coercive tactics used by, and coercive circumstances created by, the police in taking him to the police department for questioning on a Sunday when the department was empty.

Petitioner argues his February 12, 1996 *guilty plea* was involuntary and unknowing because (1) it was based on an involuntary confession, (2) trial counsel misadvised him as to the validity of the confession and the inability to effectively challenge said confession, (3) his counsel wrongfully led him to believe that if he went to trial, he would receive a 40-year sentence just as his brother had the week prior,[8] and (4) if petitioner did not plea, trial would start immediately and petitioner would be forced to go to trial with defense counsel that was not prepared for a trial.

With regard to his guilty plea, petitioner contends he was *denied effective assistance of counsel* because counsel improperly advised petitioner regarding the validity of his confession and the inability effectively challenge the confession.  Petitioner maintains that even though he had explained to counsel the coercive circumstances surrounding his confession, counsel told him his confession "hung him."  Petitioner claims counsel was ineffective for failing to investigate the circumstances surrounding petitioner's custodial confession and filing a motion to suppress his confession..  Petitioner also claims counsel wrongfully advised him to accept the State's offer of twenty (20) years when there was no evidence against him other than his coerced confession. Petitioner argues the indictment against him was based solely on his coerced confession and

---

[8]Rotenberry, petitioner's brother, was sentenced on February 8, 1996 to 20 years for a February 20, 1995 burglary of a habitation offense, and to 40 years for a May 25, 1995 aggravated robbery offense and a June 6, 1995 aggravated robbery offense.  *See State v. Rotenberry*, Case No. 35,372-B, 35, 373-B, and 35,374-B.

counsel was thus ineffective for failing to file a motion to quash the indictment.

A *guilty plea* in state court typically may not be attacked on federal habeas review on the ground that it is involuntary because of an allegedly coerced confession.   *See McMann v. Richardson*, 397 U.S. 759 (1970).[9]   However, a state court plea of guilty is subject to collateral attack in federal court on the ground that said plea was motivated by a coerced confession if the defendant was incompetently advised by his attorney. *Id*.[10]  *Cf. Tollett v. Henderson*, 411 U.S. 258, 267, 93 S.Ct. 1602, 1608, 36 L.Ed.2d 235, 243 (1973); *Bradbury v. Wainwright*, 658 F.2d 1083, 1087 (5th Cir. 1981), *cert. denied*, 456 U.S. 992, 102 S.Ct. 2275, 73 L.Ed.2d 1288 (1982).  Here, petitioner claims ineffective assistance of counsel (in the form of counsel's misadvice with regard to the validity of his confession) undermined the knowing and intelligent requirements of his *guilty plea*.  Consequently, the undersigned will consider petitioner's collateral attack on his *guilty plea* on the basis that counsel's representation of petitioner was so deficient with regard to his advice and actions concerning petitioner's confession that petitioner's plea was rendered unknowing.

In his October 17, 2003 Supplemental Brief, filed prior to respondent's answer, petitioner alleged specific facts why his plea was involuntary and unknowing.  Appended to petitioner's supplemental brief was an affidavit signed by petitioner.  Petitioner's pleadings have asserted specific facts to support his original allegations and the affidavit, while clearly self-serving, constitutes some evidence to support his allegations.  Consequently, the undersigned does not find petitioner's grounds in this federal habeas action are conclusory, although the furnishing of those

---

[9]The Court noted a defendant who pleads guilty is convicted on his counseled admission in open court that he committed the crime charged against him. Therefore, the prior confession is not the basis for the judgment, has never been offered in evidence at a trial, and may never be offered in evidence.

[10] The Court explained the defendant is bound by his plea and his conviction unless he can allege and prove serious derelictions on the part of counsel sufficient to show that his plea was not, after all, a knowing and intelligent act.

details not previously alleged in the state court proceedings reinforces respondent's non-exhaustion defense.

With regard to the state court record in this case concerning petitioner's guilty plea, the undersigned notes petitioner signed a "Written Plea Admonishment" setting forth the possible minimum and maximum sentence for the charged offense, and the trial court admonished petitioner in open court and in writing as to the range of punishment of 15 to 99 years. Petitioner also signed a "Stipulation of Evidence" and a "Judicial Confession," and pleaded guilty pursuant to a plea bargained agreement of twenty (20) years confinement with an affirmative deadly weapon finding. After being fully and properly admonished, petitioner still chose to plead guilty.

The record, while showing petitioner was properly admonished, entered a guilty plea, and signed the requisite documents supporting such plea, contains nothing concerning what led to petitioner's plea, nothing about counsel's advice to petitioner, or how such circumstances affected the knowingness of petitioner's plea.[11] The state courts did not develop any record showing evidence, or absence of evidence, of coercion, misadvice on the part of defense counsel, or any violation of petitioner's right to counsel. The state trial court did not require a more definite pleading from petitioner upon receiving his state habeas petition, nor did it conduct a hearing or enter findings of fact and conclusions of law with regard to his petition. The Texas Court of Criminal Appeals did not identify any basis for its denial of petitioner's state habeas application without written order. The state court record, in an of itself, does not clearly demonstrate petitioner's guilty plea was knowing. Consequently, this Court held the evidentiary hearing in this case.

---

[11]The undersigned finds the "voluntariness" of petitioner's guilty plea is established by the record, except to the extent that any misadvice on the part of counsel rendered the plea unknowing and, thus, involuntary on this basis.

Additionally, the undersigned notes that "[o]nce a criminal defendant has entered a guilty plea, all non-jurisdictional defects in the proceedings are waived <u>except claims of ineffective assistance of counsel relating to the voluntariness of the plea</u>." *Smith v. Estelle* 711 F.2d 677, 682 (5th Cir. 1983) (emphasis added). Here, petitioner alleges *ineffective assistance of counsel* for acts that occurred prior to his plea and claims of ineffective assistance of counsel related to the voluntariness of his plea. Consequently, the undersigned will consider petitioner's claims of ineffective assistance of counsel relating to the voluntariness of his guilty plea. Petitioner's allegations of ineffective assistance of counsel which do not relate to the voluntariness of his plea are addressed separately below.

B.
<u>Evidentiary Hearing Testimony</u>

At the evidentiary hearing, this Court received testimony regarding petitioner's claims of an involuntary and unknowing guilty plea, which necessarily included the related claims of ineffective assistance of counsel, claims of an involuntary confession, and of an *Edwards v. Arizona* violation.

Petitioner testified that on the day he was arrested for burglary, he was advised of his rights, stated he had nothing to say, and requested an attorney. All questioning stopped, he was booked into jail, and then transferred to the county jail. Petitioner testified he was subsequently taken from the county jail on a Sunday by two APD officers and was not told where they were going or why. He stated that after being placed alone in a small room for a period of time, Officer Williams entered and advised him "they had him" on the burglary charge but believed he was also involved in various robberies, including one at a Pizza Hut where petitioner's wife had previously worked. Petitioner testified Williams told him he would tie petitioner's wife to the robberies and their children, including a son undergoing treatment for cancer, would be removed from the home and

placed with a state agency.  Petitioner stated Williams promised he would not pursue charges against petitioner's wife, and thus the children would not be removed,  if he would confess to the robberies and enter a guilty plea.  Petitioner also testified Williams told him he would work out a deal with the district attorney to limit petitioner's sentence to ten (10) years.  Petitioner advised Williams gave him the specifics for the confession for the robbery offense before the taped confession began and stopped the tape recording numerous times during the confession in order to reverse and re-record portions of the confession.  Petitioner acknowledged he did, however, have some knowledge of the Pizza Hut robbery from another individual.  Petitioner testified he did not initiate the interrogation, nor did he tell anyone else he wanted to talk.

Petitioner testified he spoke to trial counsel face-to-face only two times prior to entering his guilty plea – the first time in the hall during his brother's trial, and the second time, on petitioner's trial date.  Petitioner testified that at the first meeting, counsel told him the State had adequate evidence to convict him on the robbery charge, although they did not discuss the incident reports or fingerprint evidence.  Petitioner averred he told counsel of the threats made with regard to his family and the coercive tactics employed during questioning, but that counsel advised he had heard the taped confession and the confession "hung him" and could not be overcome in court.  Petitioner testified that on the Friday before his trial date on Monday, counsel, on the telephone, eluded to a plea offer by the State but did not give the details.  Petitioner testified he was only told that he would be going to court on the following Monday, but was not told he would be asked to either enter a guilty plea or go to trial.  Petitioner testified that on that Monday, he was, for the first time, advised the State had offered 15 years on the robbery charge.  He testified counsel told him he should take the offer because he would probably receive a 40-year sentence if he went to trial as his brother had, and that if he refused the offer, trial would start immediately.  Petitioner testified

counsel did not discuss any possible witnesses that could be called on his behalf or any defense strategy.  Petitioner testified that under these circumstances, he agreed to the 15-year plea agreement.  Petitioner was told, however, that the trial judge refused to accept anything less than a 20-year plea agreement.  Petitioner testified he accepted the 20-year plea offer because if he did not, he would be forced to an immediate trial with unprepared trial counsel.  Petitioner acknowledged he made the necessary admissions during the plea hearing, but that he made such statements because he was required to in order to receive the plea bargain.  Petitioner also acknowledged he never told counsel prior to his plea that the police had reinitiated interrogation after petitioner had requested counsel, but argued counsel never asked him who initiated the subsequent questioning.

Trial counsel, Mr. Gene Fristoe, testified that if petitioner had told him the police had made threats against petitioner's wife and family, that the police had reinitiated questioning after petitioner had invoked his right to counsel, or that the police had made promises in exchange for petitioner's confession, he would have filed a motion to suppress petitioner's confession.  Counsel testified the State's file in this case did not alert him to any problems, and that he was never informed of any improprieties, threats or coercion by petitioner.  Counsel also testified petitioner asked him to negotiate a good plea bargain for him.  Counsel denied not telling petitioner of the State's plea offer until the day of trial, denied telling petitioner to take the plea, denied telling petitioner he would get a 40-year sentence if he went to trial as his brother did, and denied ever telling petitioner his confession "hung him."  Counsel acknowledged he was not prepared to go to trial on that Monday because he had been told by petitioner to get a plea.  Counsel testified petitioner did not make any statement to the effect that he was not guilty, but was going to plead anyway.  Counsel testified that if petitioner had not pled, he would have sought a continuance and prepared for trial.  Counsel acknowledged the physical evidence found at the robbery and the

witnesses' statements did not necessarily implicate petitioner.[12]

Officer Tim Williams acknowledged petitioner did not contact the APD directly to request to speak with the APD,[13] but testified petitioner's wife contacted Officer Ken Farren (the officer she had spoken with previously) and told him petitioner wanted to speak with him.  The officer testified petitioner's wife did not indicate what petitioner wanted to "talk" about.  Williams testified that when he and Officer Farren picked petitioner up from the county jail, they advised petitioner that his wife had called and told them petitioner wanted to talk.  The officer testified he did not remember petitioner's response, but that he did not say that he did not want to talk to them. Williams testified it was not unusual to question suspects on weekends when officers are assigned weekend duty.  Williams acknowledged he advised petitioner that his wife had given a statement, that the APD was aware of his wife's previous employment, and that he had discussed petitioner's son's battle with cancer with petitioner.  He also acknowledged speaking with petitioner about the APD's investigation into petitioner's wife's involvement in the robbery to the effect that she may have given petitioner information about the restaurant's closing procedures, monies, etc.  Williams testified he was investigating the burglary of a habitation and was not assigned the investigation of the robbery and, thus, did not have specific information regarding the robbery at the time of petitioner's confession.  Williams denied making any threats against petitioner's family, any promises of leniency, or any deals with the DA limiting petitioner's sentence exposure.  Williams

---

[12]The assistant district attorney on petitioner's case also testified at the evidentiary hearing. He testified the 20-year plea offer in this case was a good offer considering petitioner was facing 5-6 other felony charges, enhanced by a prior felony, and the current offense involved the use of a deadly weapon.  He acknowledged petitioner did not make a confession with regard to the burglary while making extensive confessions as to the robbery, but that the record did not show any thing improper with regard to the confessions.  The ADA opined he could have possibly gotten a conviction on the robbery charge even without petitioner's confession due to the similarities with the string of other robberies, and that the burglary charge could have been brought as an aggravated robbery charge.  The ADA opined petitioner would have received a 30-year sentence or more if he had gone to trial.

[13]Williams stated there was no way for an APD officer to take a direct request to talk from an inmate.

acknowledged advising petitioner that it would be in his best interest to "come clean" as to any

crimes in which he was involved, and that the DA would be advised of any cooperation he gave

with the burglary investigation.  Williams did not believe he would have made any reference to any

state agency taking possession of petitioner's children.  Williams testified petitioner never told him

he had previously invoked his right to counsel.  The officer also averred he never stopped the tape

recording during petitioner's confession.  Williams acknowledged he usually has an accused write

out a statement or provides a written statement for an accused to sign but explained there were so

many cases in which petitioner was suspected of being involved that it would have taken a

considerable amount of time to create written statements for each case.  The officer testified that

after taking petitioner's statements and writing a supplemental report, he had no more involvement

in the robbery case and was not contacted by defense counsel regarding petitioner's confessions.


C.
Findings as to Confession, Guilty Plea, and
Effectiveness of Counsel with Regard to Confession and Guilty Plea

The undersigned makes the following findings based upon the above-referenced testimony

elicited at the hearing, any relevant evidence, the pleadings of record, and petitioner's affidavit:

1.      The testimony of Amarillo Police Department Officer Tim Williams was
        consistent and credible.  Based on Officer Williams' testimony, petitioner:

        a.      has not shown his confession to the aggravated robbery offense was
                induced by any false promises by Officer Williams that petitioner
                would not be charged with more than two offenses or that he would
                not be sentenced to more than 10 years if he confessed to the robbery;

        b.      has not shown he was coerced into confessing to the aggravated
                robbery offense by Officer Williams threatening to arrest petitioner's
                wife and prosecute her for crimes petitioner had committed, or by
                threatening to place petitioner's children with state social services if
                he did not confess;

        c.      has not shown he was coerced into waiving his right to an attorney by

any threat by Officer Williams that any request by petitioner for counsel would result in all deals being called off and the prosecution of petitioner's wife going forward; and

d.    has not shown the questioning of petitioner at the police department on a Sunday, and the questioning techniques used by the officers, were so coercive as to overcome petitioner's free will.

The undersigned further finds petitioner's *confession* was not coerced and that it was, in fact, voluntary.

2.    Petitioner has <u>not</u> shown he was denied his Constitutional right to effective assistance of counsel. Specifically, petitioner has not shown deficient performance by trial counsel, to wit:

a.    it has not been shown that counsel misadvised petitioner as to the validity of his confession;

b.    it has not been shown that counsel advised petitioner that he would, as a matter of fact, receive a 40-year sentence if he went to trial on the aggravated robbery charge or that such advice, even if it was made, was sufficient to overcome petitioner's free will to make the decision as to whether or not to plead guilty;

c.    it has not been shown that petitioner would have been forced to an immediate trial with unprepared counsel if he did not enter a guilty plea; and

d.    it has not been shown that counsel improperly advised petitioner to accept the State's plea bargain.

3.    Petitioner has not shown his *guilty plea* was involuntary or unknowing because:

a.    he has not shown his confession was coerced or a result of false promises, or that his guilty plea was motivated by such a coerced confession;

b.    he has not shown he was incompetently advised with regard to his confession; and

c.    he has not shown that his opinion that defense counsel was unprepared to go to trial and that trial would start immediately was sufficient to render his guilty plea involuntary.

Petitioner's grounds alleging an involuntary or coerced confession and an involuntary and/or unknowing guilty plea should be denied.  Except for petitioner's claim of ineffective assistance of counsel for failing to discover an *Edwards v. Arizona* claim, petitioner's claims of ineffective assistance with regard to the confession and guilty plea should be denied.

D.
Other Claims of Ineffective Assistance of Counsel

Petitioner argues he was denied effective assistance of counsel because counsel failed to properly investigate the case to locate exculpatory evidence.  Petitioner contends there was no evidence to connect him to the aggravated robbery crime in that there were no eyewitnesses identifying him, there was no evidence linking petitioner to the weapon used in the crime, and there was "no warrant."  Petitioner also claims counsel never scheduled an appointment to speak with him, and had no contact with petitioner until petitioner initiated two brief phone calls with him.  Petitioner maintains he only briefly spoke to counsel two times in person prior to his court appearance.

These claims of ineffective assistance of counsel were waived by the entry of petitioner's guilty plea.  As noted above, the undersigned finds petitioner has not shown his guilty plea was involuntary.  Consequently, the waiver bars consideration of these claims, of which he had knowledge at the time of his plea.  Even upon consideration of these claims, however, said claims would not provide petitioner a basis for federal habeas corpus relief because they are conclusory.  Petitioner has not identified what, if any, exculpatory evidence further investigation by counsel would have revealed.  Nor has he demonstrated that his limited contact with counsel resulted in deficient performance by counsel.  These claims of petitioner should be DENIED.

E.

Sufficiency of the Evidence

Petitioner argues the evidence was insufficient to prove he was guilty of aggravated robbery because the only evidence against him was a coerced confession.  Petitioner contends there were no eyewitnesses, fingerprint evidence or other physical evidence linking him to the charged offense. Petitioner contends he can raise this issue in federal habeas corpus proceedings because he was denied the right to raise it on direct appeal due to an insufficient library – a state created impediment to petitioner's access to the courts.

"No federal constitutional issue is raised by the failure of the Texas state court to require evidence of guilt corroborating a voluntary plea." *Baker v. Estelle*, 715 F.2d 1031, 1036 (5th Cir. 1983), *cert. denied*, 465 U.S. 1106, 104 S.Ct. 1609, 80 L.Ed. 2d 138 (1984).  The *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 2790, 61 L.Ed.2d 560 (1979) mandate that sufficient evidence exist from which a rational fact finder could find guilt beyond a reasonable doubt is inapplicable to convictions based on a guilty plea.  *See Kelley v. Alabama*, 636 F.2d 1082, 1083-84 (5th Cir. 1981).  This claim is not a proper one for federal habeas review.  *See also Smith v. McCotter*  786 F.2d 697, 702-03 (C.A.5 1986).

F.

Enhancement

Petitioner argues his prior conviction of burglary of a motor vehicle was improperly used to enhance both his indictment for aggravated robbery and his indictment for burglary of a habitation – two separate causes which were plea bargained together.  Petitioner cites this Court to no authority to support his position.  Moreover, this appears to be a matter of state law and not a constitutional issue for federal habeas corpus review.  *See Baldwin v. Blackburn*, 653 F.2d 942, 948 (5th Cir. 1981), *cert. denied*, 456 U.S. 950, 102 S.Ct. 2021, 72 L.Ed.2d 475, *reh'g dismissed*, 457 U.S. 1112,

102 S.Ct. 2918, 73 L.Ed.2d 1323 (1982) (a failure to comply with state law requirements presents a

federal habeas issue only if it involves federal constitutional issues).  Even so, it does not appear

any violation of state law occurs when two indictments charging separate offenses allege the same

prior felony conviction for purposes of enhancing the minimum punishment.  Texas law governing

penalties for repeat and habitual felony offenders at the time of the alleged offense provided:

> If it is shown on the trial of a first-degree felony that the defendant has been once
> before convicted of a felony, on conviction he shall be punished by imprisonment in
> the institutional division of the Texas Department of Criminal Justice for life, or for
> any term of not more than 99 years or less than 15 years. In addition to
> imprisonment, an individual may be punished by a fine not to exceed $10,000.

Tex. Penal Code Ann. § 12.42(c) (Vernon 1995).  The statute required only that a prior felony

conviction be final in order to use said conviction for enhancement purposes.  The statute did not

limit the number of times the prior felony conviction could be used to enhance punishment.

Petitioner's claim is without merit.

## G.
## Actual Innocence

In his supplemental brief, petitioner argued he is actually innocent of the convicted offense

in expectation that respondent would attempt to apply a procedural bar to certain claims petitioner

raises in the instant federal habeas application.  Petitioner asserts that at the state level, he claimed

actual innocence under the guise of ineffective assistance of counsel.  Petitioner contends the

"issues were never adjudicated on the merits at the state level" because no evidentiary hearing was

held and no findings of fact or conclusions of law were entered by the trial court.

This claim was not exhausted with the state courts and, thus, no relief can be granted.

Moreover, a denial of state habeas relief by the state court is an adjudication on the merits

regardless of whether an evidentiary hearing was held or findings of fact or conclusions of law

entered.  In addition, petitioner has not submitted any evidence to support his claim of actual

innocence other than his self-serving statements, and his guilty plea and confessions made to

Officer Williams directly contradict his claims of actual innocence.  Not only has petitioner not

shown he is actually innocent, it clearly appears he is guilty not only of the aggravated robbery

offense challenged here, but also guilty of other robberies as well.  This claim must be denied.

## H.
### Right to Counsel Violations

### 1. *Exhaustion*

To the extent petitioner contends the police violated his right to counsel by initiating and

resuming questioning after petitioner had previously been arrested for the burglary of a habitation

offense, *Mirandized*, and had invoked his right to remain silent and his right to counsel, this claim,

and any claim that counsel was ineffective for failing to raise this issue pretrial, are unexhausted

and procedurally barred from federal habeas consideration.

### 2. *Merits*

Under *Edwards v. Arizona*, 451 U.S. 477, 484, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981),

when an accused expresses his desire to speak to the police only through counsel, he is not subject

to further interrogation until counsel is made available to him.  That is, *unless the accused initiates

further communications with the police*.  *Guidry v. Dretke*, 397 F.3d 306, 328 (5th Cir. 2005).

Respondent counters petitioner's *Edwards* claim by arguing the Sixth Amendment right to

counsel is offense-specific,  *McNeil v. Wisconsin*, 501 U.S. 171, 111 S.Ct. 2204, 115 L.Ed.2d 158

(1991), and that the contact by police relating to the aggravated robbery offense did not violate

petitioner's constitutional rights because his right to counsel only applied to the burglary of a

habitation offense for which he had been arrested when he invoked his right against self-

incrimination.  Respondent's argument is misplaced because *Edwards* recognizes a <u>Fifth</u> <u>Amendment</u> right against self-incrimination and a right to have counsel present when an accused is questioned instead of a <u>Sixth Amendment</u> right to counsel which is the basis of the *McNeil v. Wisconsin* opinion.  The Fifth Amendment right against self-incrimination recognized by the *Edwards* court is not offense-specific and once a defendant in custody invokes such right, then police cannot reinitiate questioning unless the defendant initiates contact.

Here, the evidence offered by respondent at the evidentiary hearing on this issue comes perilously close to falling short and, except for the fact that the claim is unexhausted, might entitle petitioner to relief.  However, review of Amarillo Police Officer Williams' testimony, which the undersigned has found to be credible, reflects there is sufficient evidence upon which to find that petitioner did, in fact, reinitiate the contact with the police.

First, Officer Williams testified petitioner's wife contacted the police on petitioner's behalf advising that petitioner wanted to talk with the police.  While that statement is hearsay and the Court does not consider it on this issue, Officer Williams also testified that when he retrieved petitioner from the county jail, he informed petitioner that his (petitioner's) wife had contacted the police and told them petitioner wanted to talk.  Although Williams could not recall petitioner's exact reply, Williams did recall that petitioner did not indicate he did not want to talk with the officers, nor did he indicate his wife had not instructed the police to contact the officers.  Petitioner did not protest or indicate any unwillingness to talk.  The failure of petitioner to respond to or contradict the representation made by Officer Williams that petitioner, through his wife, had indicated he wanted to talk to the police is not hearsay and is admissible evidence which is sufficient to support a finding that petitioner reinitiated the contact with the police.  As recited above, the Court not only finds the testimony of Officer Williams to be credible, but the Court finds

the testimony provided by petitioner, and particularly petitioner's claims of actual innocence, to not

be credible.  Consequently, petitioner waived his Fifth Amendment right against self-incrimination

by initiating contact with law enforcement officers after he previously invoked such rights.

For the reasons recited above, petitioner Egerton is not entitled to relief on his *Edwards*

claim.


## V.
## RECOMMENDATION

It is the RECOMMENDATION of the United States Magistrate Judge to the United States

District Judge that all claims raised by petitioner JACK DONALD EGERTON, JR. be DISMISSED

for failure to exhaust and that all relief be DENIED as to any claims deemed to have been

exhausted.


## VI.
## INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a file-marked copy of this Report and

Recommendation to petitioner, his counsel, and counsel for respondent  by the most efficient means

available.

IT IS SO RECOMMENDED.

ENTERED this 25th day of August 2006.


_____
CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE

## * <u>NOTICE OF RIGHT TO OBJECT</u> *

Any party may object to these proposed findings, conclusions and recommendation.  In the event a party wishes to object, they are hereby NOTIFIED that the deadline for filing objections is eleven (11) days from the date of filing as indicated by the file mark on the first page of this recommendation.  Service is complete upon mailing, Fed. R. Civ. P. 5(b), <u>and</u> the parties are allowed a 3-day service by mail extension, Fed. R. Civ. P. 6(e).  Therefore, any objections must be <u>filed</u> **on or before the fourteenth (14th) day after this recommendation is filed**.  *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b); R. 4(a)(1) of Miscellaneous Order No. 6, as authorized by Local Rule 3.1, Local Rules of the United States District Courts for the Northern District of Texas.

Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation."  Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties.  A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court.  *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).